UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>INLINE CONCRETE CUTTING AND CORING INC.,<br><br>　　　　Defendant. | Case No. 5:25-cv-02585-SB-SP<br><br>ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT [DKT. NO. 16] |

　　　　Plaintiff Construction Laborers Trust Funds for the Southern California Administrative Company is a fiduciary of several employee benefit plans created and maintained pursuant to the Labor Management Relations Act (LMRA).[1] Plaintiff alleges that Defendant Inline Concrete Cutting and Coring Inc., a construction contractor, violated its agreements with the Trust Funds by failing to submit reports and pay contributions on behalf of its employees.  Defendant failed

---

[1] The employee benefit plans (referred to collectively as the "Trust Funds") are: Laborers Vacation, Holiday, and Sick Pay Trust Fund; Construction Laborers Pension Trust for Southern California; Laborers Training and Re-Training Trust Fund for Southern California; Laborers Health and Welfare Trust Fund for Southern California; Laborers Contract Administration Trust Fund for Southern California; Center for Contract Compliance; Fund for Construction Industry Advancement; Laborers' Trusts Administrative Trust Fund for Southern California; Southern California Partnership for Jobs Trust Fund; San Diego County Construction Laborers Pension Trust Fund; and San Diego Construction Advancement Fund 2003.  Dkt. No. 1 ¶ 2.

1

to appear, answer, or otherwise respond to Plaintiff's complaint. Plaintiff now moves for default judgment for damages, specific performance, and injunctive relief. The motion is granted in part.

I.

The complaint and motion describe a series of labor agreements giving rise to Defendant's obligations. In November 2017, Defendant entered into the Laborers' Short Form Agreement for the Construction Industry, which in turn bound it to the terms of collective bargaining agreements known as the Construction Master Labor Agreements (MLAs). Dkt. No. 1 ¶ 6. The MLAs "incorporate the various trust agreements that created each of the Trust Funds," including the Southern California Laborers Health and Welfare Trust Fund (Health Fund). Dkt. No. 16-1 ¶ 5; Dkt. No. 1 ¶ 7. Together, the agreements require Defendant to submit monthly fringe benefit contributions and reports to the Trust Funds for all hours its employees covered by the agreement worked. Dkt. No. 1 ¶¶ 10–11. In addition, since at least May 2018, Defendant has been bound by the Health Fund's Non-Jobsite Agreement through which it obtains health insurance for its non-bargaining (i.e., non-unionized) employees. Dkt. No. 1 ¶ 7. Under the Non-Jobsite agreement, Defendant must also remit monthly contributions and reports to the Health Fund for its non-bargaining employees. *Id.* The Trust funds rely on the reports "to determine the amount of Monthly Contributions due to the Trust Funds by employers and the credit toward fringe benefits to be allocated to their employees." *Id.* ¶ 11. Employers that fail to timely submit contributions or reports required by the agreements must pay liquidated damages and interest. *Id.* ¶ 12.

At various times between October 2019 and July 2025, Defendant either failed to submit contributions or reports or submitted them late. *Id.* ¶ 21. Consequently, Plaintiff seeks damages, specific performance, and injunctive relief to enforce the agreements. *Id.* ¶¶ 18–35.

II.

The motion satisfies the jurisdictional and procedural requirements for default judgment. There is federal jurisdiction over the action pursuant to ERISA and the LMRA because Plaintiff seeks to enforce provisions of ERISA and the terms of labor agreements. *See* 29 U.S.C. § 1132(e)(1) (providing for exclusive jurisdiction in district courts over fiduciary claims under ERISA); *id.* § 185(a) (federal jurisdiction exists in suits to enforce terms of CBA). Personal jurisdiction

also exists pursuant to ERISA's nationwide service-of-process provision. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); 29 U.S.C. § 1132(e)(2).

The motion also satisfies the applicable procedural requirements. *See* C.D. Cal. L.R. 55-1. Plaintiff served Defendant by substitute service by leaving a copy of the summons and complaint at Defendant's usual mailing address with the person apparently in charge and thereafter mailing the process by first-class mail. Dkt. No. 11; *see* Fed. R. Civ. P. 4(e)(1), (h)(1)(A) (allowing service of corporation pursuant to law of the state where the district is located); Cal. Civ. Proc. Code § 415.20(a). The clerk subsequently entered default against Defendant after it failed to respond to the complaint. Dkt. No. 13. Plaintiff's moving papers contain the information required by both the Local Rules and the Federal Rules of Civil Procedure, and Defendant is not a minor, incompetent person, or subject to the Servicemembers Civil Relief Act. Dkt. No. 16-26 at 1 n.2; Dkt. No. 16-24 ¶ 4. In addition, Plaintiff provided Defendant with notice of the motion as required under Local Rule 55-2. Dkt. No. 16-29 (proof of service).

### III.

Even when the jurisdictional and procedural requirements are satisfied, the decision whether to enter default judgment is discretionary. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). On default, a court accepts as admitted all factual allegations other than those relating to the amount of damages, *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977), and weighs several factors in considering if default judgment is appropriate, *Eitel*, 782 F.2d at 1471–72.

The *Eitel* factors support entry of a default judgment: (1) Plaintiff would be prejudiced absent a default judgment because it cannot otherwise obtain relief; (2) Plaintiff's claims appear to be meritorious; (3) the complaint adequately pleads plausible claims against Defendant; (4) the amount of money Plaintiff seeks—$307,477.65—while substantial, is adequately supported and not so large to warrant denial; (5) Defendant has made no attempt to defend this case, and the undisputed allegations are accepted as true; (6) there is no evidence to suggest that Defendant's default results from excusable neglect; and (7) Defendant's failure to appear or respond makes deciding the case on the merits impractical.

Only a few of the *Eitel* factors warrant further discussion.

The second and third *Eitel* factors together assess the merits of a plaintiff's substantive claims. The complaint sufficiently states a claim under ERISA and the

LMRA. The claims for relief in the complaint are framed in terms of the ultimate relief sought, not the specific cause of action asserted. The substantive allegations, however, demonstrate violations of ERISA and the LMRA.

"The enforcement of collective bargaining agreements, although preempted by federal law under § 301(a) of the LMRA, 29 U.S.C. § 185(a), is generally governed by traditional principles of contract law." *Trustees of S. California IBEW-NECA Pension Plan v. Alarm Tech Sec. Sys., Inc.*, No. 08-CV-3432-PSG, 2008 WL 4196627, at *3 (C.D. Cal. Sept. 8, 2008). To prevail, a plaintiff must establish: (1) the existence of a valid contract, (2) plaintiff's performance, (3) defendant's breach, and (4) resulting damages. *Id.* Here, the complaint alleges the existence of a related series of valid, written agreements obligating Defendant to make payments to Trust Funds.[2] Plaintiffs may enforce the terms of the agreements as fiduciaries under ERISA. *Id.*

The complaint further alleges that Defendant (1) "failed to pay the rates specified in the Agreements to certain Trust Funds on behalf of those workers for each hour worked (or paid for) by employees performing services covered by the Agreements"; and (2) "failed to report and pay required contributions for all non-bargaining unit employees who worked 80 or more hours per month as required under the Non-Jobsite Agreement." Dkt. No. 1 ¶ 19. Specifically, Defendant failed to submit payments or reports, or submitted them late, for the following months: October 2019 through September 2023, November 2023, December 2023, March 2024, May 2024, July 2024, September 2024, January through March 2025, June 2025, and July 2025. *Id.* ¶ 21. The motion attaches a spreadsheet of the unpaid contributions, liquidated damages, and interest Plaintiff seeks for these months. Dkt. No. 16-19. Therefore, Plaintiff has stated a claim for relief on its claim for breach.

Section 515 of ERISA "allows plan fiduciaries to enforce obligations created under the collective bargaining agreement against employers who fail to make contributions to employee benefit plans." *Bd. of Directors of the Motion Picture Indus. Pension Plan v. S&L Tramondo, Inc.*, No. 16-CV-3683-RSWL, 2016 WL

---

[2] While Plaintiff attaches excerpts of the relevant agreements to the motion, and not to the complaint, this omission does not impact the merits of Plaintiff's claims. *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1046 (C.D. Cal. 2011) ("A plaintiff who sues on a written contract is not required to attach a copy of the contract to the complaint, but its existence and how it was breached must be identified.").

6781094, at *5 (C.D. Cal. Nov. 16, 2016).  Under ERISA, a plaintiff must prove that "(1) the Trust Agreements are multi-employer plans; (2) the collective bargaining agreement obligated [d]efendant[] to make employee benefit contributions; and (3) [d]efendant[] failed to make the contribution payments." *Id.*  Plaintiff has alleged that the Trust Funds are multiemployer plans, that Defendant was obligated to make contributions, and that Defendant failed to do so. Plaintiff has therefore adequately pleaded a claim for violations of § 515.

IV.

Plaintiff seeks both damages and equitable relief.  On default judgment, a plaintiff must provide sufficient evidence of the remedies sought.  *Bd. of Trs. of the Boilermaker Vacation Tr. v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).

A.

The damages request consists of:  (1) $196,568.05 in unpaid contributions (for the months of November 2023, December 2023, March 2024, May 2024, September 2024, June 2025, and July 2025); (2) $51,277.04 in liquidated damages (the sum of liquidated damages for each month with late or unpaid contributions);[3] (3) $50,374.01 in interest on the liquidated damages and unpaid contributions; and (4) $1,120 in audit fees.  Plaintiff's damages request is supported by a spreadsheet showing the unpaid contributions, liquidated damages for months Defendant failed to pay or paid late, and interest they seek for each month; employee and counsel declarations; and deficiency letters sent to Defendant concerning its late payments. Dkt. Nos. 16-1, 16-19, 16-20, 16-24.  The request for unpaid contributions, liquidated damages, and interest is therefore granted.

---

[3] The MLAs provide for liquidated damages equal to the greater of $25 or 20% of late or unpaid contributions and recognize that delinquencies cause administrative and other costs that are difficult to quantify.  Because the parties appear to have made a good-faith determination that 20% reasonably forecasts anticipated damages—supported by evidence that average administrative costs are 22.9%—Plaintiff is entitled to liquidated damages under the contracts.  *See Trs. of Bricklayers Loc. No. 3 Pension Tr. v. Huddleston*, No. 10-1708, 2013 WL 2181532, at *6 (N.D. Cal. May 20, 2013) (finding contractual language about difficulty of measuring actual damages demonstrated reasonableness).

5

B.

"ERISA section 502 provides for specific performance actions in that the court shall award 'other legal or equitable relief as the court may deem appropriate' in an action to enforce a multiemployer plan." *Carpernters Sw. Admin. Corp. v. Jones*, No. 20-CV-00133-DOC, 2020 WL 5887012, at *4 (C.D. Cal. July 8, 2020); *see* 29 U.S.C. §§ 1132(a)(3)(A), (g)(2)(E). "Injunctive relief may be appropriate when: (1) the plaintiff is threatened by some irreparable injury; (2) the injury contemplated is actual and not prospective; and (3) the issuance of an injunction does not offend public policy." *Jones*, 2020 WL 5887012, at *8; *see Carpenters Health & Welfare Tr. for S. California v. Vonderharr*, 384 F.3d 667, 671 (9th Cir. 2004) ("[O]nly traditional forms of equitable relief [are] available under ERISA."). Here, Plaintiff seeks two forms of equitable relief.

First, Plaintiff seeks an order requiring Defendant to produce audit records from October 2023 through the present. Plaintiff previously audited Defendant for the period October 1, 2019 through September 30, 2023, and discovered hours worked that Defendant had failed to disclose in its monthly reports. Dkt. No. 16-1 ¶ 21. Plaintiff therefore asserts that an audit for the period following September 30, 2023 is necessary "to establish the full amount of [Defendant's] delinquency," including for months it has requested damages based on the information it possesses. *Id.*

The agreements state that the "Trustees shall have authority to audit Contractor records to determine the appropriate contributions and shall have specific authority to examine the Contractor's records[.]" Dkt. Nos. 16-11 at 2–3, 16-12 at 2. The categories of information Plaintiff seeks to audit are within the scope of the agreements: payroll and employee records, job files, records of cash receipts, bank statements, disbursement records, collective bargaining agreements with other unions and associated contributions, and records related to the formation, licensing, renewal or operation of the employer. Dkt. No. 1 at 15–16. Accordingly, Plaintiff's request for an audit is granted. *See Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1495 (9th Cir. 1990) ("[T]he Trustees' right to audit in this case is established by the Trust Agreement when, as here, the employer contributes to the Fund with the intent that its employees receive the Fund's benefits."); *Trustees of S. California IBEW-NECA Pension Plan v. M.L. Alexander Elec. Co. Inc.*, No. 08-CV-04689-GAF, 2009 WL 10672431, at *4 (C.D. Cal. July 31, 2009) ("[T]he amount at stake is not yet known to either party because Plaintiffs have been unable to conduct an audit

of Defendant's payroll. Therefore, default judgment should be granted so that such an audit can be completed. . . . If the Court were to deny Plaintiffs' motion for partial default judgment, Plaintiffs would be without recourse to recover the contributions.").

Second, Plaintiff seeks an order requiring Defendant to: (1) pay past-due contributions; (2) submit all outstanding reports; and (3) submit no later than 4:30 p.m. on the 15th day of each month (a) truthful and accurate reports covering all its employees for the previous month, (b) an employee declaration attesting to the truthfulness and completeness of the report, and (c) a check for the full amount owing on the monthly report. The Court declines to order Defendant to submit past-due contributions, as it has already awarded damages for unpaid contributions. A separate order to submit all outstanding reports is therefore unnecessary.[4]

With regard to the prospective relief sought, however, Plaintiff adequately shows irreparable harm because the reports are needed to calculate and enforce the contribution requirements and because Defendant's continued nonpayment would force repeated, costly enforcement actions. Dkt. No. 16-1 ¶¶ 9, 24–25. The threatened injury is not speculative given Defendant's history of noncompliance, and the proposed injunction does not offend public policy. Accordingly, the request for injunctive relief is granted. *See Constr. Laborers Tr. Funds for S. California Admin. Co. v. Reyes Eng'g Contractors, Inc.*, No. 25-CV-1290-KK, 2025 WL 3158111, at *8 (C.D. Cal. Oct. 20, 2025) (collecting cases granting injunctive relief requiring employers to produce records and provide contributions in the future).

C.

ERISA provides for mandatory attorney's fees and costs in actions by fiduciaries of employee benefit trust funds to enforce the provisions of the plans. 29 U.S.C. § 1132(g)(2)(D). Plaintiff calculates $9,548.17 in attorney's fees

---

[4] While the complaint suggests that Defendant failed to submit reports for months before the audit period (October 2023 through the present), Plaintiff already conducted an audit for the period October 1, 2019 through September 30, 2023, and does not suggest that the results of that audit were insufficient. *See* Dkt. No. 16-1 ¶ 21. Indeed, Plaintiff agreed at the hearing that this order's analysis of the appropriate scope of available remedies—provided in tentative form before the hearing—is correct.

pursuant to Local Rule 55-3 based on a percentage of the total damages. The requests for attorney's fees and $512.28 in filing and service costs are granted.

V.

Plaintiff's motion is granted. The Court orders as follows:

1.     Plaintiff is awarded $307,477.65 in damages, consisting of $196,568.05 in unpaid contributions, $51,277.04 in liquidated damages, $50,374.01 in prejudgment interest, $9,548.17 in attorney's fees, and $512.28 in costs, less the $1,921.87 credit.

2.     Within 30 days of this order, Defendant shall submit the audit records requested in the complaint from October 2023 through the present.

3.     Defendant is ordered to submit to the Trust Funds by 4:30 p.m. on the 15th day of each month, starting February 15, 2026: (a) truthful and accurate reports covering all its employees for the previous month; (b) an employee declaration attesting to the truthfulness and completeness of the report based on his or her personal knowledge; and (c) a check for the full amount owing on the monthly report.

Date: January 16, 2026

                                                Stanley Blumenfeld, Jr.
                                                United States District Judge